**UNITED STATES DISTRICT COURT      EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| KEMP & SONS, INC. | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:22-CV-79 |
| | § | |
| GREAT LAKES INSURANCE SE, | § | |
| ALACRITY SOLUTIONS GROUP, LLC | § | |
| AND DIANA BLACKWELL | § | |
| *Defendants.* | § | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT
## TO CORRECT A MISNOMER BY CORRECTLY NAMING PLAINTIFF

COMES NOW, Plaintiff, Kemp & Sons, Inc., incorrectly named (Misnomer) in previous pleadings as Kemp Properties, LLC #1  (hereinafter sometimes referred to as "Plaintiff or Kemp") and files this Third Amended Complaint against Defendants Great Lakes Insurance SE ("Great Lakes") Defendant Diana Blackwell ("Blackwell") and Defendant Alacrity Solutions Group, LLC ("Alacrity") (Collectively "Defendants") (Defendant Great Lakes has accepted responsibility for Defendant Diana Blackwell ("Blackwell") and Defendant Alacrity Solutions Group, LLC ("Alacrity").

This Third Amended Complaint is being filed to change the name of the Plaintiff from Kemp Properties, LLC # 1, to Kemp & Sons, Inc.  This is a misnomer where the name of the Plaintiff was incorrect, but the party (Plaintiff) to the litigation is correct.  By correcting the name of the Plaintiff from Kemp Properties, LLC # 1 to Kemp & Sons, Inc., the Defendant will not suffer prejudice by the Plaintiff being correctly named in this third amended complaint and for cause of action would show the following:

## I.
## DISCOVERY CONTROL PLAN

Plaintiff intends for discovery to be conducted pursuant to Level 3 of the Texas Rules of Civil Procedure.  Plaintiff seeks damages in excess of $1,000,000.

## II.
## PARTIES & PROPERTY

1. Plaintiff is Kemp & Sons, Inc., ("Plaintiff") Plaintiff is the owner of forty-one insured properties located in Jefferson County (See Attached Exhibit A).  The insured properties suffered extensive interior and roof damage as a result of a hurricane that traveled through Jefferson County, TX on or about August 27, 2020.  The insurance policies at issue are policy No. GRLP0473 and GRLP0477 ("Policies").

2. Defendant Great Lakes is a foreign insurance company engaged in the business of insurance in the State of Texas, Including Jefferson County, Texas.  This Defendant has already been served.

3. Defendant Alacrity is a multi-lines claims adjusting company engaged in the business of adjusting insurance claims in the State of Texas, including Jefferson County, Texas.  No service is needed.

4. Defendant Diana Blackwell is an insurance adjuster licensed to adjust claims and engaging in the business of insurance in the State of Texas, including Jefferson County, TX.  No service is needed

## III.
## JURISDICTION

5. The Court has jurisdiction over the cause of action because the amount in controversy is within the jurisdictional limit of the Court.  Plaintiff contends that the jury is the sole

decision maker on the amount of damages suffered by Plaintiff, but as required by Texas Rules of Civil Procedure 47, Plaintiff seeks more than $1,000,000.

6. The Court has jurisdiction over Defendants because Defendants engaged in the business of insurance in the State of Texas and the cause of action arises out of Defendants business of adjusting insurance claims in the State of Texas.

### IV.
### VENUE

7. Venue is proper in Jefferson County, Texas because the insured Properties are situated in Jefferson County, Texas.  Tex. Civ. Prac. & Rem. Code. § 15.032. The damage to Plaintiff's Properties for which it made claims to Defendant Great Lakes for insurance proceeds was incurred in Jefferson County, Texas as a result of a hurricane that traveled through Jefferson County, Texas.

8. Defendant Alacrity was the adjusting firm handling the claim for Great Lakes.

9. Defendant Alacrity was the adjusting firm that employed Defendant Diana Blackwell.

10. Plaintiff makes claims of unfair claims handling practices and the claim made the basis of this suit was adjusted, if it was properly adjusted, by Defendants whom conducted claim handling activities in Jefferson County, Texas.  This case involves deceptive claims handling practices that occurred in Jefferson County, Texas.

### V.
### FACTS

11. Plaintiff was assigned Commercial Policy Numbers: GRLP0473 and GRLP0477, issued by Great Lakes ("POLICIES").  Plaintiff's properties are located at various addresses in Jefferson County, TX.  ("PROPERTIES") (See Attached Exhibit A).

3

12. Great Lakes sold the Policies, insuring the Properties that are the subject of this lawsuit. Plaintiff suffered significant losses with respect to the Properties at issue and suffered additional expenses as a result of Hurricane Laura that traveled through Jefferson County, Texas.

13. Plaintiff submitted claims to Defendant Great Lakes with the date of loss on or about August 27, 2020, for damages to the Properties as a result of Hurricane Laura, a covered event under the Policies.  The damage to Plaintiff's Properties is extensive.

14. Defendant Great Lakes assigned Claim Numbers to the Properties.  See Attached Exhibit A).

15. Plaintiff filed a claim for exterior damage to the Properties.  Specifically, Plaintiff filed a claim for roof damage and interior damage as a result of Hurricane Laura.

16. Plaintiff retained the services of Justice Claims, LLC., a Public Adjusting Firm, licensed in the State of Texas, to assist with the claim.

17. Defendant Great Lakes assigned the claims to Defendant Alacrity to adjust.  Defendant Alacrity assigned the claims to adjuster Defendant Blackwell.  Defendant Blackwell was the desk adjuster and supervisor in charge of the field adjusters Trevor Linhart, Ken Kelly, Bailey Preddy, James Romero and Aaron Camp.

18. Defendants wrongfully denied and minimized Plaintiff's claims for repairs to the Properties, despite having been provided detailed estimates and pictures of damage caused by Hurricane Laura by Justice Claims representatives.

19. Defendants wrongfully denied and minimized Plaintiff's claims for repairs even though the Policy provided coverage for losses such as those suffered by Plaintiff.  Furthermore, Defendants bad faith adjustment of the claim has resulted in Plaintiff not being fully compensated in full for the damages sustained by the Plaintiff because Defendants conducted

an inadequate investigation.  As such, Plaintiff has not been fully paid for the damage to the Properties.

20. Specifically, Defendants misrepresented to Plaintiff the damage to the interior and roofs on the Properties.  Defendants knew the roofs suffered irreparable damage but refused to recommend the insurer pay to replace the roofs.  On January 30, 2021, Rick Dearing of addressed several issues regarding Alacrity's adjustment of the claim with Defendant Blackwell, such as the lack of documentation of the approved cope of work from Alacrity's adjusters.  Additionally, Rick Dearing informed Defendant Blackwell that several of the estimates submitted by Alacrity adjusters had omissions and/or additional damages that needed addressing.  Defendant Blackwell and Defendant Alacrity refused and utterly failed to respond to the letter and various other communications.  Defendants conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code §541.060 (a)(1).

21. Defendants failed to make an attempt to settle Plaintiff's claim in a fair manner, although Defendants were aware of its liability to Plaintiff under the Policy.  Justice Claims submitted detailed estimates and pictures to Defendants, but Defendants were non-compliant.  For example, Justice Claims representatives would attempt to communicate with Defendants Blackwell and Alacrity, but Defendants would not respond to communications.  Even to the extent that Justice Claims started sending correspondence to Texas Security General, Plaintiff's insurance agency, in order to facilitate the claims.  Defendants conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  Tex. Ins. Code. § 541.060(a)(2)(A).

22. Defendants failed to explain to Plaintiff the reasons for not recommending the insurer pay the claims.  Specifically, Defendants failed to offer Plaintiff adequate compensation, without any

explanation why full payments were not being made.  Furthermore, Defendants did not communicate that any future settlement or payments would be forthcoming to pay for the entire loss covered under the Policies, nor did Defendants provide any explanation for the failure to adequately settle Plaintiff's claims.  In a February 8, 2021, letter sent from Justice Claims to Texas Security General, Rick Dearing details his frustration with Defendants because they will not respond to his communications.  In the letter he states, "Additionally, we have submitted supplemental damage reports on the 41 claims and have received no response on what is needed to process these."  In the letter, Rick Dearing also states, "Quite simply, who can I speak with about facilitating the settlement of these claims?  Alacrity is not providing information or timely communicating; therefore I am looking for someone that has authority on these claims and not the adjusting firm."  Defendants conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices.  Tex. Ins. Code. § 541.060(a)(3).

23. Defendants failed to affirm or deny coverage of Plaintiff's claim within a reasonable time, despite Plaintiff's continuously requesting Defendants to make his position as the adjuster for the claim known. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claims, in writing from Defendants.  In his letter dated February 8, 2021, Rick Dearing states, "There is no sense of urgency to have these claims resolved and we are approaching the 6-month mark.  We find this unacceptable."  Defendants conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  Tex. Ins. Code. § 541.060(a)(4).

24. Defendants refused to recommend the insurer fully compensate Plaintiff for the damage to Plaintiff's roofs and interior under the terms of the Policies, even though Defendants failed to conduct a reasonable investigation.  Specifically, Defendant performed an outcome-oriented

investigation of Plaintiff's roof and interior claims which resulted in a biased, unfair and inequitable evaluation of Plaintiff's property damage and losses.  Defendants conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  Tex. Ins. Code § 541.060(a)(7).

25. Defendants knowingly and/or recklessly made false representations, as described above, as material facts and/or knowingly concealed all or part of material information from Plaintiff regarding the damage to Plaintiff's roofs and interiors.

26. As a result of the Defendants wrongful acts and omissions, Plaintiff was forced to retain the attorneys who are representing Plaintiff in this cause of action.

**VI.**
**CAUSES OF ACTION**

**VIOLATIONS OF THE TEXAS INSURANCE CODE**

27. Paragraphs 1 through 26 are incorporated by reference.

28. Defendants conduct constitutes multiple violations of the *Texas Unfair Compensation and Unfair Practices Act.*  TEX. INS. CODE Chapter 541.  All violations under this article are made actionable by TEX. INS. CODE Section 541.151.

29. Defendant Great Lakes had a contractual duty pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.  Damage to Plaintiff's Properties caused by Hurricane Laura was a covered loss, yet Defendants Great Lakes, Alacrity and Blackwell violated various provisions of the Texas Insurance Code in their overall handling of Plaintiff's claims.

30. Plaintiff's PA, Justice Claims, assumed the responsibility of adjusting Plaintiff's claims in January 2021.  This was detailed in a letter to Defendant Blackwell.  "As you know, we are

representing Mr. Kemp of Kemp Properties in his claim on 43 residential properties underwritten by Great Lakes Insurance SE.

31. Immediately, Rick Dearing informs Defendant Blackwell that all of the estimates from Great Lakes have not been produced.  "To date, we have received 31 of the 43 estimates from Great Lakes.  Out of the 12 that are left, there are 7 still under review and 5 that we simply need the estimate on."

32. Instead of responding to Rick Dearing and simply providing the remaining estimates Defendant Blackwell never responds to Rick Dearing.

33. On February 8, 2021, Rick Dearing decides he will bypass Defendant Blackwell because she failed to respond and he send a letter to Texas Security General, Plaintiff's insurance broker in order facilitate settlements of the claims.  "Quite simply, who can I speak with about facilitating the settlements on these claims?  Alacrity is not providing information or timely communicating; therefore I am looking for someone that has the authority on these claims and not the adjusting firm.  I sent the attached letter titled CIW1 on January 30, 2021 and have yet to receive a response.  There is no sense of urgency to have these claims resolved and we are approaching the 6-month mark.  We find this unacceptable."

34. By March of 2021, approximately 7 months after Hurricane Laura damaged Plaintiff's properties, Rick Dearing sent another letter to Texas Security General regarding the claims.  "Out of the forty-three claims we are handling, we still have several that we have not received any information on.  There are three that still have not been reviewed and there are four others that have been reviewed but we were not provided a copy.  We have submitted supplemental request on all, but two locations and we have not heard back on any of those with one lone exception as Ms. Blackwell asked for some interior photos on one of the files.

35. Additionally, in a letter dated April 15, 2021 and sent to Plaintiff's counsel by Defendant Blackwell and Defendant Alacrity, the letter acknowledged damage to one of Plaintiff's insured properties and stated a payment of $10,340.97 was been sent to Plaintiff's counsel. The payment was never sent.  Defendant Blackwell was sent several communications via email regarding the check by Plaintiff's counsel and Defendant Blackwell never responded.   As of the drafting of this document, Plaintiff nor any of its representatives have received the payment of $10,340.97.

36. In fact, there are several payments that represented undisputed damages owed to Plaintiff that Defendants said would be paid that were never paid, such as payments for $3,043.50; $3,576.68; $611.07 and $426.97.  Multiple demands for payment have been made to various representatives for Defendants, but to date, Plaintiff has not received the payments for undisputed damages.

37. Defendants unfair practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, particularly damage to the interior and roofs of the Properties, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE Section 541.051, 541.060(1) and 541.061.

38. Defendants unfair settlement practices, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claims, even though Defendants liability under the policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE Section 541.051, 541.060(2)(A) and 541.061.

39. Defendants unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the policy, in relation to the facts or

applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE. Sections 541.051, 541.060(3) and 541.061.

40. Defendants unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of Plaintiff's claims or to submit a reservation of right to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE Section 541.051, 541.060(4) and 541.061.

41. Defendants unfair settlement practice, as described above, of refusing to recommend payment of Plaintiff's claim without conducting a reasonable investigation of the roofs of the Properties constitutes an unfair method of competition and unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE Section 541.051, 541.060(7) and 541.061.

42. Defendants unfair settlement practice, as described above, by failing to pay the undisputed amount on claims, despite informing Plaintiff on several occasions the undisputed amount payments were being made and that the payments would be tendered.  TEX. INS. CODE Section 541.051, 541.060(7) and 541.061.

43. Thus, Defendants were engaging in unfair settlement practice by:

    a. Misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue; and

    b. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claims with respect to which the insurer's liability had become reasonably clear; and

c.  Failing to promptly provide Plaintiff a reasonably explanation of the basis in the policy, in relation to the facts or applicable law, for Defendants denial of a claim or offer of a compromise settlement of a claim; and

d.  Informing Plaintiff that undisputed amounts would be paid and then failing to pay Plaintiff the undisputed amounts; and

e.  Each of the aforementioned unfair settlement practices was committed knowingly by Defendants and was a producing cause of Plaintiff's damages.  Defendants are therefore liable to Plaintiff for engaging in such unfair settlement practices and causing Plaintiff's damages.

**NON-COMPLIANCE WITH TEXAS INSURANCE CODE CHAPTER 542**

44. Paragraphs 1 through 43 are incorporated by reference.

45. Defendants conduct constitutes multiple violations of the *Texas Prompt Payment of Claims Act.* TEX. INS. CODE Chapter 542.  All violations made under this article are made actionable by TEX. INS. CODE Section 542.060.

46. Justice Claims provided Defendant Alacrity and Defendant Blackwell supplemental information on 43 claims in a letter dated January 30, 2021.  As of March 15, 2021, Justice Claims had not received a response from Defendant Great Lakes or Defendant Alacrity.  In a letter Dated March 15, 2021, to Texas Security General, Rick Dearing stated, "Out of the forty-three claims we are handling, we still have several that we have not received any information on.  There are three that still have not been reviewed and there are four others that have been reviewed but we were not provided a copy.  We have submitted supplemental request on all, but two locations and we have not heard back on any of those with one lone exception as Ms. Blackwell asked fro some interior pictures on one of the files."  Defendants failure as described

above, to commence an investigation of the claim, and request from Plaintiff all items, statements, and forms they reasonably believed would be required within the applicable time constraints, constitutes a non-payment of the claim.  TEX. INS. CODE Sections 542.055-542.060.

47. Defendants denial and delay to recommend payment of Plaintiff's claim, as described above, following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, constitutes a non-prompt payment of the claim. TEX. INS. CODE Sections 542.055-542.060.

## BREACH OF CONTRACT

48. Paragraphs 1 through 47 are incorporated by reference.

49. Defendant Great Lakes conduct, as described above, constitutes a breach of the insurance contract entered into between Plaintiff and Defendant Great Lakes.

50. Defendant Great Lakes and Plaintiff entered into an insurance contract in which Defendant Great Lakes agreed to pay for direct physical loss of or damage to the covered property described in the declarations caused by or resulting from a covered cause of loss.  Plaintiff suffered such a loss as a result of Hurricane Laura tornado and wind damage which was a covered loss under the terms of the insurance contract.  Defendant Great Lakes breached the contract by refusing to pay Plaintiff for the damages to the Properties as a result of Hurricane Laura.

51. Additionally, Defendant Great Lakes contractually agreed to either, (1) Pay the value of the lost or damaged property or (2) Pay the cost of repairing or replacing the lost or damaged property.  For the purpose of this litigation the other options are irrelevant at this point. Defendant Great Lakes has done neither of these.

52. Defendant Great Lakes retained Defendant Alacrity which failed to conduct a reasonable investigation of the damage to Plaintiff's Properties as a result of the tornado and wind from Hurricane Laura.  Defendants Great Lakes, Alacrity and Defendant Blackwell performed an outcome-oriented investigation of Plaintiff's claims, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's claims.

53. Defendant Great Lakes failed to pay Plaintiff amongst other things for direct physical loss to the exterior and interior of Plaintiff's Properties as a whole.

54. Defendant Great Lakes failed to pay Plaintiff amongst other things for direct physical loss to the roofs and interior of the Properties.

55. Defendant Great Lakes contractually agreed and failed to pay Plaintiff for undisputed damages, which Defendant Great Lakes has not done.  Defendants Alacrity and Blackwell discovered undisputed damage on some of some of the Properties, but Defendant Great Lakes refused and failed to pay or acknowledged it owed undisputed payments for damage to the Properties and on numerous occasions said the money would be paid but was never paid.

56. Defendant Great Lakes breached its contractual obligation by refusing to provide Plaintiff with estimates of damages for all the insured Properties.  Plaintiff has requested the estimates of damage of several occasions, but Defendants Great Lakes, Alacrity and Blackwell failed to produce all the estimates.

57. Defendants Alacrity and Blackwell refused and failed to communicate with Plaintiff and its representatives to the extent Plaintiff's representatives resorted to communicating to Defendants through its insurance agency Texas Security General.

58. Defendants refusal to communicate with Plaintiff or its representatives was so egregious the insured requested assistance and intervention with the Texas Department of Insurance.

59. Defendant Great Lakes failure and refusal, as described above, to communicate with Plaintiff, to conduct a proper investigation of the claims, to pay the adequate compensation as it is obligated to do so under the terms of the policy in question and under the laws of the State of Texas, constitutes a material breach of the insurance contract with Plaintiff.  Plaintiff has suffered damages in the form of actual damages, bad faith damages, consequential damages and reasonable and necessary attorney's fees.

60. Additionally, in a letter dated April 15, 2021 and sent to Plaintiff's counsel by Defendant Blackwell and Defendant Alacrity, the letter acknowledged damage to one of Plaintiff's insured properties and stated a payment of $10,340.97 was been sent to Plaintiff's counsel. The payment was never sent.  Defendant Blackwell was sent several communications via email regarding the check by Plaintiff's counsel and Defendant Blackwell never responded.   As of the drafting of this document, Plaintiff nor any of its representatives have received the payment of $10,340.97.

61. In fact, there are several payments that represented undisputed damages owed to Plaintiff that Defendants said would be paid that were never paid, such as payments for $3,043.50; $3,576.68; $611.07 and $426.97.  Multiple demands for payment have been made to various representatives for Defendants, but to date, Plaintiff has not received the payments for undisputed damages.

62. Defendant Great Lakes breach proximately caused Plaintiff's injuries and damages.   All conditions precedent required under the Policy have been performed, excused, waived or otherwise satisfied by Plaintiff.

**VIOLATIONS OF THE TEXAS INSURANCE CODE**

63. Paragraphs 1 through 62 are incorporated by reference.

64. Defendant Great Lakes conduct constitutes multiple violations of the *Texas Unfair Compensation and Unfair Practices Act.* TEX. INS. CODE Chapter 541. All violations under this article are made actionable by TEX. INS. CODE Section 541.151.

65. Defendant Great Lakes unfair practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, particularly damage to the roofs and interior of the Properties, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE Section 541.051, 541.060(1) and 541.061.

66. Defendant Great Lakes agreed to pay for direct physical loss or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss, yet when presented evidence of direct physical damage Defendant Great Lakes and the Defendants Great Lakes retained to adjust Plaintiff's claims did the exact opposite.

67. Approximately five months after the date of loss, Plaintiff was still waiting to receive estimates from Defendants. Rick Dearing of Justice Claims sent Defendant Blackwell a letter dated January 30, 2021, stating in part, "To date, we have received 31 of 43 estimates from Great Lakes. Out of the 12 that are left, there are 7 still under review and 5 that we simply need the estimate on."

68. Because of Defendants refusal to communicate with Plaintiff's representative Rick Dearing, He had to resort to communicating with Texas Security General to try to facilitate settlement of the claims. On February 8, 2021, Rick Dearing sent a letter to David Winkley of Texas Security General stating in part, "I am writing to you to request your assistance with claims from the above listed policies." "Unfathomably, we still have 12 of those properties that we have yet to receive an estimate, let alone payment on. As you know there are requirements

placed on carriers here in Texas that stipulate timeframes for when certain actions must be taken in a claim.  The Texas Insurance Code provides these guidelines and I have attached reference for your convenience."  "Additionally, we have submitted supplemental damage reports on the other 41 claims and have received no response on what is needed to process these."

69. Defendant Great Lakes unfair settlement practices, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claims, even though Defendant Great Lakes liability under the policies was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE Section 541.051, 541.060(2)(A) and 541.061.

70. Defendant Great Lakes unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the policies, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE. Sections 541.051, 541.060(3) and 541.061.

71. Additionally, in the February 8, 2021, letter, Rick Dearing stated, "Quite simply, who can I speak with about facilitating the settlements of these claims?  Alacrity is not providing information or timely communicating; therefore I am looking for someone that has authority on these claims and not the adjusting firm.  I sent the attached letter titled CIW1 on January 30, 2012 and have yet to receive a response.  There is no sense of urgency to have these claims resolved and we are approaching the 6-month mark,  we find this unacceptable."

72. Defendant Great Lakes unfair settlement practice of refusing and failing to provide Plaintiff with estimates of damage for all the Properties, despite Plaintiff requesting all the estimates of damages.  TEX. INS. CODE. Sections 541.051, 541.060(3) and 541.061.

73. Defendant Great Lakes unfair settlement practice of discovering damage and failing to tender the undisputed amount of damages for some of the Properties, despite acknowledging the payments were owed, but failing to tender the payments.  TEX. INS. CODE. Sections 541.051, 541.060(3) and 541.061.

74. Defendant Great Lakes unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of Plaintiff's claims or to submit a reservation of right to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE Section 541.051, 541.060(4) and 541.061.

75. Defendant Great Lakes unfair settlement practice, as described above, of refusing to pay Plaintiff's claims without conducting a reasonable investigation constitutes an unfair method of competition and unfair and deceptive act or practice in the business of insurance.  INS. CODE Section 541.051, 541.060(7) and 541.061.

76. Defendants Alacrity and Blackwell adjusted the claim for Defendant Great Lakes.  Defendants Alacrity and Blackwell were charged with investigating the claims and communicating with the Plaintiff about the policy terms and damage to the insured properties.  Insurance adjusters are "persons engaged in the business of insurance" under the Texas Ins. Code 541.001, *et. seq.*, and are individually liable for their violations of the Texas Insurance Code.  *See Liberty Mut. Ins. Co. v. Garrison Contractors, Ins.,* 966 S.W. 2d 482, 486 (Tex. 1998).

77. Defendants Alacrity and Blackwell were tasked with the responsibility of conducting a thorough and reasonable investigation of Plaintiff's claims, including discovering covered damage and fully quantifying covered damages to Plaintiff's insured Properties.

78. Defendants Alacrity and Blackwell conducted a substandard, results-oriented inspection of the Properties.  As a result, Defendants Alacrity and Blackwell failed to discover covered damages and/or fully quantify covered damage to Plaintiff's Properties, as the Policies and Texas law requires.

79. Additionally, in a letter dated April 15, 2021 and sent to Plaintiff's counsel by Defendant Blackwell and Defendant Alacrity, the letter acknowledged damage to one of Plaintiff's insured properties and stated a payment of $10,340.97 was been sent to Plaintiff's counsel. The payment was never received.  Defendant Blackwell was sent several communications via email regarding the check by Plaintiff's counsel and Defendant Blackwell never responded. As of the drafting of this document, Plaintiff nor any of its representatives have received the payment of $10,340.97.

80. In fact, there are several payments that represented undisputed damages owed to Plaintiff that Defendants said would be paid that were never paid, such as payments for $3,043.50; $3,576.68; $611.07 and $426.97.  Multiple demands for payment have been made to various representatives for Defendants by Plaintiff's counsel, but to date, Plaintiff has not received the payments for undisputed damages.

81. Thus, Defendants were engaged in unfair settlement practice by:

    f.  Misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue, such as paying for direct physical loss caused by a covered event; and

g.  Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claims with respect to which the insurer's liability had become reasonably clear; and

h.  Failing to provide Plaintiff with estimates of damages for all the properties; and

i.  Failing to tender payment for undisputed damages for all the Properties; and

j.  Failing to promptly provide Plaintiff a reasonably explanation of the basis in the policy, in relation to the facts or applicable law, for Defendant Great Lakes denial of a claim or offer of a compromise settlement of a claim; and/or

k.  Each of the aforementioned unfair settlement practices was committed knowingly by Defendants Alacrity and Blackwell were a producing cause of Plaintiff's damages. Defendants Alacrity and Blackwell are therefore liable to Plaintiff for engaging in such unfair settlement practices and causing Plaintiff's damages.

## FRAUD

82. Paragraphs 1 through 81 are incorporated by reference.

83. Defendants are liable to Plaintiff for common law fraud.  Defendant Great Lakes materially represented it would pay Plaintiff for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause or Loss.  That representation by Defendant Great Lakes was false.  Defendant Great Lakes has not paid Plaintiff for direct physical loss of or damage to its covered property caused by Hurricane Laura.  In fact, there are still properties that Defendant Great Lakes hasn't even produced a damage estimate for damage their representatives have discovered.  Defendant Great Lakes hasn't paid the undisputed damage for some of the properties where there representative found damage.  Defendant Great Lakes and its representatives Defendant

Alacrity and Defendant Blackwell made a material representation that checks for undisputed damage was being mailed to Plaintiff's representatives, but never sent the checks.  Defendant Great Lakes, Defendant Alacrity and Defendant Blackwell represented to Plaintiff's that damage estimates would be produced, but in fact they did not produce damage estimate for all 43 Properties.

84.  Defendant Great Lakes, Defendant Alacrity and Defendant Blackwell knowingly didn't produce the estimates and payments because Plaintiff's representatives placed them on notice that the estimates and payments had not been produced and the Defendants knowing ignored Plaintiff's representatives to the point that Plaintiff's representatives sought alternative methods of communicating with Defendants such as contacting the insurance agency of Plaintiff and the Texas Department of Insurance.

85. And even after counsel for both Plaintiff and Defendants have been engaged and communications have been exchanged regarding the payments and estimates, the payments and estimates still have not been produced.

86. The representations mentioned above were false.  Defendant Great Lakes has not paid for direct physical loss or damage to Covered Property at the premises described in the insurance agreement between Plaintiff and Defendant Great Lakes that was damage by Hurricane Laura which was a covered event.  Defendant Great Lakes represented and did not produce damage estimate for all the damaged properties, despite Plaintiff representatives requesting the estimates.

87. Defendant Great Lakes represented in the insurance agreement it would pay for direct physical loss or damage to Covered Property resulting from a covered loss, such as Hurricane Laura.

That representation induced Plaintiff to enter into an agreement for insurance coverage with Defendant Great Lakes.

88. Plaintiff was justified in relying on Great Lakes representation in the insurance agreement that it would pay for direct physical loss of or damage to Covered property caused by or resulting from a covered loss such as Hurricane Laura.

89. Plaintiff was justified in relying on Defendant Alacrity and Defendant Blackwell when they represented they would send adjuster to inspect the property, produce estimates and provide payment for damaged property.

90. Additionally, in a letter dated April 15, 2021 and sent to Plaintiff's counsel by Defendant Blackwell and Defendant Alacrity, the letter acknowledged damage to one of Plaintiff's insured properties and stated a payment of $10,340.97 was been sent to Plaintiff's counsel. The payment was never sent.  Defendant Blackwell was sent several communications via email regarding the check by Plaintiff's counsel and Defendant Blackwell never responded.   As of the drafting of this document, Plaintiff nor any of its representatives have received the payment of $10,340.97.

91. In fact, there are several payments that represented undisputed damages owed to Plaintiff that Defendants said would be paid that were never paid, such as payments for $3,043.50; $3,576.68; $611.07 and $426.97.  Multiple demands for payment have been made to various representatives for Defendants, but to date, Plaintiff has not received the payments for undisputed damages.

## CONSPIRACY TO COMMIT FRAUD

92. Paragraph 1 through 91 are incorporated by reference.

93. Defendants are liable to Plaintiff for conspiracy to commit fraud.

94. Each and every one of the representations, as described above, concerned material facts for the reason Plaintiff would not have acted and which Defendants knew were false or made recklessly without any knowledge of their truth as a positive assertion.

95. The statements were made with the intention that they should be acted upon by Plaintiff, who in turn acted in reliance upon the statements, there causing Plaintiff to suffer injury and constituting common law fraud.

## KNOWLEDGE AND INTENT

96. Paragraphs 1 through 95 are incorporated by reference.

97. Each of the acts described above, together and singularly, were done "knowingly" and "intentionally" by Defendants with conscious indifference to the harm that would result to Plaintiff and were producing causes of Plaintiff's damages described herein.

## VIII.
## DAMAGES AND PRAYER

98. Paragraphs 1 through 97 are incorporated by reference.

99. Plaintiff, complains of Defendants and prays Defendants be cited to appear and answer and on the final trial of the merits, Plaintiff recovers from Defendants the following:

100.   Plaintiff would show that all of the above-mentioned acts, taken together or singularly, constitute the proximate and/or producing causes of damages sustained by Plaintiff.

101.   For noncompliance with the *Texas Unfair Competition and Unfair Practices Act,* Plaintiff is entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to the policy, including, but not limited to, direct and indirect consequential damages, mental anguish, court cost and attorney's fees.

## JURY DEMAND

Plaintiff demands a jury trial and has tendered the appropriate fee.

Respectfully submitted,



By: /s/ *James Carlos Canady*
   James Carlos Canady
   Texas State Bar No.: 24034357
   5020 Montrose Blvd., Floor 6, Suite 6
   Houston, TX 77006
   Telephone No.: (713) 221-2551
   Facsimile No.: (713) 221-2552
   Email: ccanady@canadylawfirm.com

   **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing ***Plaintiff's Third Amended Complaint*** has been forwarded to all known counsel of record listed below via certified mail, return receipt requested, facsimile, email or hand delivery on this the 5TH day of July 2022.

Jake Kaufman Via Email:          jkauffman@gallowaylawfirm.com
Les Pickett Via Email:           lespickett@gallowaylawfirm.com
Galloway, Johnson, Tompkins, Burr & Smith
1301 McKinney, Suite 1400 Houston, TX 77010


                                      */s/ James Carlos Canady*
                                      James Carlos Canady